IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY JONES, BRIAN MILNE, PATRICK JOHNSON, RANDALL SCOTT, EDWARD WILKINS III, JOHN HARRIS II, ARIES MONROE, RHONDELL SAWYER, RODNEY GALLON, JOSEPH MANNING, JAVAR GHOLSON, PASQUALE DESTRO, SHEDRICK MCCALL, JOSEPH MLEZIVA, STEPHEN HARRIS, and HENRY MILTON, individually and on behalf of those similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>BRG SPORTS, INC.,<br><br>    Defendant. | Case No. 18 C 7250 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    The plaintiffs in this putative class action sued BRG Sports, Inc., the maker of sports equipment bearing the Riddell brand, alleging that it manufactured football helmets that were defective as designed, was negligent with respect to the design, and failed to adequately warn users of its products' shortcomings. BRG has moved to strike the plaintiffs' class allegations. For the reasons stated below, the Court grants that motion.

## Background

    As discussed further below, the Court takes the allegations in the complaint as true for the purposes of this motion. BRG, through its brand Riddell,[1] is the largest

---

[1] Consistent with the parties' styling, the Court refers to the defendant as Riddell.

football helmet manufacturer in the world.  It has occupied its role as a market leader since at least the 1970s, forming business relationships and player education and safety partnerships with organizations like the National Football League and National Collegiate Athletic Association.  But Riddell is not just a market leader; it, in no small part, created the market.  Riddell's innovations during the mid-twentieth century led to what we think of today as a standard football helmet.  Before Riddell's efforts, most football players wore only leather padding on their heads.

According to the plaintiffs, however, Riddell eventually started cutting corners.  As scientific awareness of the consequences of repeated football-related head injuries emerged, Riddell allegedly dragged its feet in implementing changes pivotal to player safety.  Although Riddell helmets continued to evolve in the latter part of the twentieth century, they purportedly did not keep up with the state of the art.  Specifically, the plaintiffs allege that certain changes to the materials, configuration, and dimensions of Riddell's products would have been both cost-effective and readily technologically achievable and would have led to categorically safer helmets.  *See* First Am. Compl., dkt. no. 36, ¶¶ 80-123 (describing the changes that Riddell could allegedly have made to its helmets to increase their effectiveness).  But, the plaintiffs say, Riddell failed to make these changes, even though it was aware of their viability and even as some of its competitors implemented the very same safety innovations.  As a result, the plaintiffs contend, Riddell is liable under both negligence and design defect tort theories.

The named plaintiffs are former high school and college football players who used Riddell helmets.  They allege that they were injured as a result of Riddell's defective designs.  Each individually alleges that he would have played differently, used

a different brand of helmet, and/or avoided playing football altogether if he had known of the Riddell helmets' shortcomings. In addition to their negligence and design-defect claims, the plaintiffs also allege that Riddell provided inadequate warnings of the foreseeable risks of wearing an allegedly subpar Riddell helmet. Each named plaintiff alleges he suffers from some combination of headaches, dizziness, dementia, emotional instability, memory loss, depression, motor impairment, impulsiveness, unusual aggressiveness, attentional problems, or other cognitive impairments attributable to head injuries sustained as a result of wearing Riddell's allegedly defective helmets.

In their first amended complaint, the named plaintiffs seek to represent eighteen separate putative classes, each including players who played football in a particular state. They propose the following class definitions: "All individuals who wore a Riddell helmet while participating in a high school and/or college-level football program based in [each named plaintiff's state of football participation] between 1975 and the present." *Id.* ¶ 272. The states for which the plaintiffs propose classes—and the corresponding named plaintiff(s)—are:

- Michigan – Jeffrey Jones
- Pennsylvania – Brian Milne
- Kentucky – Patrick Johnson
- Texas – Randall Scott and John Harris II
- Georgia – Edward Wilkins III and Shedrick McCall
- Mississippi – Edward Wilkins III
- Tennessee – Shedrick McCall
- Alabama – Aries Monroe
- Massachusetts – Rhondell Sawyer
- Connecticut – Rhondell Sawyer
- Florida – Rodney Gallon and Joseph Manning
- Louisiana – Joseph Manning
- Virginia – Javar Gholson
- Maryland – Javar Gholson

3

- New Jersey – Pasquale Destro
- New York – Pasquale Destro
- Wisconsin – Joseph Mleziva
- California – Stephen Harris and Henry Milton

*Id.* The proposed class definition also expressly excludes judicial personnel involved in this action and their families, the defendant and its affiliates, those who request to be excluded, otherwise putative class members who have already pursued similar claims to final judgment, and the attorneys involved in the matter. *Id.*

Riddell has moved to strike the plaintiffs' class allegations under Rules 12(f) and 23 of the Federal Rules of Civil Procedure.

## Discussion

Rule 23 sets out a number of familiar requirements. First, Rule 23(a) requires a plaintiff class to satisfy the requirements of numerosity, commonality, typicality, and adequacy. *See* Fed R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). And Rule 23(b)(3) allows a class action to be maintained only if "questions of law or fact common to class members predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The rule identifies four factors that may be relevant to the superiority analysis:

> (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The primary bone of contention in Riddell's motion is predominance, though the parties also dispute commonality and superiority. "There is no mathematical or mechanical test for evaluating predominance." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018). In making this assessment, the Court must do "more than a tally of common questions; [it] must consider their relative importance." *Id.* The mere fact that not every issue is "amenable to common resolution" does not necessarily defeat predominance, even if "individual inquiries may be required after the class phase" on discrete, easily resolved issues like damages. *Id.*

## A. Standard for a motion to strike

Rule 23(c)(1)(A) says that a federal district court should rule at "an early practicable time after a person sues or is sued as a class representative . . . whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Some courts have deemed a motion to strike an appropriate device to accomplish this task of assessing the viability of a class action where a complaint is so facially lacking that no amount of discovery or time could provide support for class status for the claims pleaded. *See, e.g.*, *DuRocher v. Nat'l Collegiate Athletic Ass'n* (*DuRocher I*), No. 13-cv-01570-SEB-DML, 2015 WL 1505675, *6 (S.D. Ind. Mar. 31, 2015).[2] Others have rejected use of the

---

[2] At least one court of appeals has expressly endorsed the use of motions to strike to probe class allegations in this way. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). The Seventh Circuit has not addressed the issue.

motion to strike for this purpose, concluding that "a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action" and, as a result, that "a decision denying class status by striking class allegations at the pleading stage is inappropriate." *See Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

Still other courts have taken a middle path, considering a motion to strike on its merits but abiding by the Seventh Circuit's admonition that such motions are generally "disfavored." *See, e.g.*, *Murdock-Alexander v. Tempsnow Emp't*, No. 16 C 5182, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016). This approach is grounded in the reality that although "plaintiffs generally have the burden of demonstrating that they meet the requirements of Rule 23," it is typically class action defendants who "control . . . the information plaintiffs need to meet that burden." *Id.* (quoting *Guzman v. N. Ill. Gas Co.*, No. 09 C 1358, 2009 WL 3762202, at *2 (N.D. Ill. Nov. 6, 2009)). As a result, "discovery is often appropriate, even necessary" to determine whether a putative class's allegations have merit. *See id.* (quoting *Guzman*, 2009 WL 3762202, at *2). The Court adopts this approach. That is, the Court will consider the motion to strike on its merits bearing in mind that the plaintiffs have not yet been allowed to conduct any discovery.

Even among those courts that entertain motions to strike for the purpose of assessing class allegations, there is disagreement about the appropriate standard. First, courts have come to inconsistent conclusions with respect to which party bears the burden of persuasion. *See Huddleston v. Am. Airlines, Inc.*, No. 16 C 9100, 2018 WL 4742097, at *2 (N.D. Ill. Oct. 2, 2018) (collecting examples). The Court need not

address this issue, however, because, as in *Huddleston*, "the Court would reach the same conclusion here no matter which party bears the burden." *See id.*

Second, courts have come to very different conclusions about the correct scope of the analysis on a motion to strike class allegations. Some courts have concluded that, because discovery has not yet occurred, the proper approach approximately mirrors that of a motion to dismiss targeted narrowly at the class claims. *See, e.g.*, *DuRocher*, 2015 WL 1505675, at *1; *Rysewyk v. Sears Holdings Corp.*, No. 15 C 4519, 2015 WL 9259886, at *7 (N.D. Ill. Dec. 18, 2015). That is, these courts deem it "practicable" within the meaning of Rule 23(c)(1)(A) "to resolve the class certification question at the pleadings stage only when it is apparent from the complaint that class certification is inappropriate." *Rysewyk*, 2015 WL 9259886, at *7; *see also Murdock-Alexander*, 2016 WL 6833961, at *4 ("[A] court should address class allegations at the pleading stage only when the pleadings are facially defective and definitively establish that a class action cannot be maintained." (internal quotation marks omitted)). Other courts have concluded that "[b]ecause [a] defendant's motion to strike class allegations is a vehicle for analyzing the appropriateness of class certification, . . . the court is not limited to the face of plaintiff's complaint when considering the motion." *Lee v. Children's Place Retail Stores, Inc.*, No. 14 C 3258, 2014 WL 5100608, at *2 (N.D. Ill. Oct. 8, 2014).

Riddell asks the Court to look beyond the pleadings in assessing its motion. Indeed, citing *Paulson v. Abbott Laboratories*, No. 15 C 4144, 2018 WL 1508532 (N.D. Ill. Mar. 27, 2018), in which a court in this district took judicial notice of filings in a closely related docket that were pivotal to understanding the procedural history of a motion to

7

dismiss, Riddell asks the Court to give weight to filings in other lawsuits and other peripheral materials in considering this motion. The Court declines to do so. Rather, the Court agrees with the sound conclusions of the courts in *Murdock-Alexander*, *Rysewyk*, and *DuRocher* that the motion to strike analysis should—at least where the motion is filed at this early a stage of the litigation—be limited to the face of the pleadings and documents incorporated by inclusion or reference, as would be appropriate for an analogous motion to dismiss under Rule 12(b)(6). *Cf. Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (outlining the 12(b)(6) standard). As a necessary corollary, the Court takes the allegations in the plaintiffs' complaint as true for the purposes of this motion. *See id.*

In sum, the Court will grant Riddell's motion to strike only if it concludes that this is an "exceptional case" where it is clear from the complaint that "circumstances warrant a motion to strike class allegations to conserve court and party resources and where the 'pleadings make clear that the suit cannot satisfy Rule 23.'" *DuRocher*, 2015 WL 1505675, at *6 (quoting *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 830 (N.D. Ill. 2013)).

**B.     Application**

Riddell argues that the plaintiffs' class allegations should be stricken because they do not satisfy the requirements of Rule 23. It focuses on Rule 23(b)(3), contending that the plaintiffs have failed to make allegations giving rise to "questions of law or fact common to class members" that "predominate over any questions affecting only individual members." Fed R. Civ. P. 23(b)(3). Riddell relies heavily on the Supreme Court's decision in *Amchem*, where the Court quoted an advisory committee note's

warning that "mass accident" cases often raise "significant questions, not only of damages but of liability and defenses of liability, affecting the individuals in different ways," and found, in the context of a vast asbestos class, that the predominance requirement was not met. *Amchem*, 521 U.S. at 625 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment). Riddell contends that *Amchem* stands for the broad precept that personal injury claims are inappropriate for class treatment. *But see Amchem*, 521 U.S. at 594 (noting that "mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement" even though the advisory committee note warned that "such cases are ordinarily not appropriate for class treatment"). The plaintiffs, on the other hand, ask the Court to find Riddell's motion to be premature. They rely primarily on the Seventh Circuit's admonition, discussed above, that motions to strike are generally disfavored, and they argue that reasonable discovery is necessary to both narrow the proposed class definitions and refine the litigation's common questions.

Riddell makes three primary arguments. First, it argues that the putative class's claims, by their very nature, raise individualized questions of causation and damages that preclude class treatment. Riddell also makes a related argument about its affirmative defenses. Second, Riddell contends that this class action calls for the application of eighteen different states' laws to the class's claims, defeating predominance and superiority. Third, Riddell argues that the plaintiffs cannot demonstrate the superiority of class litigation because some members of the class have initiated individual lawsuits.

The Court concludes that the motion to strike class allegations must be granted

because the complaint demonstrates, on its face, that allowing this case to proceed as a putative class action would be futile. *See DuRocher*, 2015 WL 1505675, at *6; *see also Pilgrim*, 660 F.3d at 949. That is, the Court finds that no amount of discovery or opportunities to amend will save the plaintiffs' claims.

### 1. Individualized inquiries

First, Riddell points to several issues it believes render class certification untenable. It argues that this suit is primarily about personal injuries and, as a result, is brimming with individualized questions of causation and damages because members of the plaintiff class indisputably "wore different helmets that were designed, tested, engineered, and marketed differently." Def.'s Br. in Supp. of Mot. to Strike, dkt. no. 78, at 14. It also points to individualized problems of timing generated by the decades-long class definition. Riddell notes that liability for each class member's claim will necessarily will rest on determinations of the type and mechanism of his or her injury as well as analysis of the particular helmet he or she was wearing, the warnings it bore, and its condition at the time of the injury. Riddell also contends that individualized questions related to its affirmative defenses—most notably statutes of limitations—will overwhelm any common questions. Riddell reminds the Court that *Amchem* called for courts to exercise "caution when individual stakes are high and disparities among class members great." *Amchem*, 521 U.S. at 625.

The plaintiffs, on the other hand, argue that this dispute, at its core, is about Riddell's dysfunctional design process and the resulting defective products. They point to several common questions that they contend will dominate, including:

> Was Riddell negligent in designing and testing its helmets? Were those
> helmets defective in design—including as to the efficacy of their frontal

10

> pads and liner system—and were they unreasonably dangerous? Were Riddell's warnings ever sufficient to alert members of the Proposed Classes to the true risks of head injury identified in the FAC? When did Defendant become aware of the long-term risks of concussion and [repeated head injuries] (and when should it have)?

Pls.' Br. in Opp'n to Mot. to Strike, dkt. no. 80, at 10-11; *see also* First Am. Compl., dkt. no. 36, ¶ 274 (listing common questions). The plaintiffs freely admit the existence of individualized questions that will eventually need answers but contend that the common questions outlined here, among others, "represent a significant aspect" of the case, *see Messner*, 669 F.3d at 815, and therefore will satisfy the predominance requirement. The plaintiffs also argue that affirmative defenses such as statutes of limitations should not defeat predominance because they go to an individual's right to recover rather than issues underlying the defendant's liability. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162 (3d Cir. 2002). Moreover, the plaintiffs contend that the class allegations make at least a prima facie case for fraudulent concealment sufficient to potentially toll any statutes of limitations.

      Although Riddell is incorrect in its assertion that personal injury and products liability suits are never amenable to class action, the Court concludes that the individualized inquiries that pervade this case utterly destroy the plaintiffs' ability to satisfy Rule 23(b)(3).[3] To be sure, some of the design defect issues involving allegedly categorical choices not to adopt certain safety technologies appear to be relatively amenable to common resolution. But the core of this case rests on the sorts of

---

[3] In contrast, the plaintiffs' argument for Rule 23(a) commonality is stronger Commonality requires "not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. For the purposes of this requirement, "[e]ven a single [common] question will do." *Id.* at 359. Despite Riddell's perfunctory argument to the contrary, that requirement clearly is satisfied here.

11

individualized questions the Supreme Court warned of in *Amchem*. For instance, on the negligence claims, each individual plaintiff will need to demonstrate that he or she was injured and their his or her injury was caused by Riddell's conduct. But each plaintiff used different Riddell products for different lengths of time, at various levels of play and in different positions on the field, sustaining different numbers of concussions and other injuries, and receiving varying medical care. *Cf. Amchem*, 521 U.S. at 624 (noting how analogous factual differences in asbestos exposure among individual class members vitiate predominance). Such inquiries are bound to be tremendously complex as evidenced by the fact that even among the sixteen named plaintiffs—a tiny of the potentially hundreds of thousands of class members—the symptoms of injuries allegedly caused by Riddell's products include varying combinations of headaches, dizziness, dementia, and emotional instability, memory loss, depression, motor impairment, impulsiveness, unusual aggressiveness, attentional problems, and other cognitive impairments. And, if that were not enough, there are seemingly limitless confounding causal mechanisms and possible extenuating circumstances, including "family and medical history, age, diet, and lifestyle," which "may affect each putative plaintiff's response to head-related injuries." *DuRocher I*, 2015 WL 1505675, at *9.

      Similarly thorny individualized issues pervade the plaintiffs' products liability claims. At the end of the day, each plaintiff will necessarily need to prove causation and injury. And contrary to the plaintiffs' assertions, these simply are not the sort of routine, or ancillary inquiries about "damages amounts" that are often found not to predominate. *See Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008). Rather, these questions of causation and injury lie inextricably at the heart of the plaintiffs' claims.

The Court also concludes that discovery promises no hope of a remedy this infirmity, nor could the class definitions themselves be narrowed sufficiently to address the problems raised here. Even taking the allegations in the complaint as true, the Court is satisfied that there simply are not facts that could later be discovered that would render the complex, ubiquitous individualized questions of harm and causation that pervade this case amenable to collective resolution.[4]

To be clear, however, the Court does not adopt Riddell's flawed argument for a categorical rule against personal jury and products liability class actions. As the Court in *Amchem* itself noted, the mere fact that some members of the plaintiff class have allegedly sustained different injuries than other class members does not necessarily defeat predominance, at least where those injuries arise from a single discrete event. *See Amchem*, 521 U.S. at 594 (noting that "mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement" even though injuries and damages issues are frequently individualized); *see also Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). Rather, the motion to strike must here be granted because the plaintiffs' particular class allegations, taken as true, are unfit for resolution using the class action device due to the individualized questions of law and fact that will invariably predominate over common questions.

---

[4] Even if, for instance, the plaintiffs were to discover evidence that led them to propose subclasses made up of players who sustained particular injuries playing in specific positions and who wore particular models of football helmets produced during certain more narrowly defined time periods and/or bearing specifically identified warnings, such a solution would necessarily run into major manageability problems.

## 2. Variations in governing law

Riddell also argues that predominance is defeated because the plaintiffs seek to represent a class spanning eighteen different states. Under Illinois law, the law of the state with the "most significant relationship" with each individual claim will control. *See Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 163, 879 N.E.2d 893, 903 (2007); *see also NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018) ("Because we sit in diversity, we apply the choice-of-law rules used by the state in which the federal district court where the case was filed sits—here, Illinois."). Riddell argues that, as a result, this putative class action runs afoul of a Seventh Circuit ruling that "[n]o class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone, Inc.*, 288 F3d 1012, 1015 (7th Cir. 2002). Riddell also spends much of its opening brief—and a lengthy appendix—enumerating potential differences in the application of relevant states' laws, including variations in relevant defenses, burdens of proof, and elements of negligence and products liability regimes across states. *See* App. A to Def.'s Br. in Supp. of Mot. to Strike, dkt. no. 78-1. In short, Riddell contends that variations in the law governing class members' claims support granting the motion to strike in order to save the Court's and the parties' resources.

The plaintiffs acknowledge that in cases like *DuRocher*, *Bridgestone/Firestone*, and *In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation*, 314 F.R.D. 580, 597 (N.D. Ill. 2016), courts have emphasized that the class action device is ill suited for disputes that call for the application of multiple states' laws to a single class's claims. In response, they emphasize that the amended complaint proposes separate classes for claims governed by each of the eighteen relevant states'

tort laws. They suggest that Riddell may have simply missed that the amended complaint made this change, as the original complaint proposed a single class spanning all eighteen states.

The Court observes that, in addition to the predominance argument expressly made by Riddell, the plaintiffs' class allegations also implicate significant considerations regarding Rule 23(b)(3)'s superiority requirement, and particularly the class action's manageability. *See* Fed. R. Civ. P. Rule 23(b)(3)(4). The Court is unpersuaded that the plaintiffs' formal division of the class into eighteen separate parts resolves the predominance and manageability concerns presented by an enormous multistate personal injury class like this one. Although the plaintiffs' solution probably skirts the letter of *Bridgestone/Firestone* and conceivably could win the day if the issue was one of only slightly varying legal schemes, that is not the case here. The legal variations described at length by Riddell are truly significant. And these irregularities do not exist in a vacuum but rather interact in complex ways with the factual variations explained at length above to "compound the[ ] disparities" between individual plaintiffs. *See Amchem*, 521 U.S. at 624. That is, the complexity of the individualized factual issues bears a synergistic relationship with the state-by-state variations in the legal schemes, resulting in innumerable individualized inquiries that destroy both predominance and superiority and thus preclude certification under Rule 23(b)(3).

And, again, the Court concludes that no amount of discovery or further narrowing of class definitions will ameliorate these problems. *See DuRocher I*, 2015 WL 1505675, at *6; *see also Pilgrim*, 660 F.3d at 949. The motion to strike is therefore, for this reason too, granted.

### 3. Parallel litigation

Riddell also contends that this putative class action runs afoul of Rule 23(b)(3)'s superiority requirement because a handful of putative class members filed parallel litigation. It notes that one of the factors identified by the rule is "the extent and nature of any litigation concerning the controversy already begun by or against class members." *See* Fed. R. Civ. P. 23(b)(2)(B). Riddell argues that, because 100 individual lawsuits based on claims closely analogous to those in question here were initiated in late 2016 and transferred to this Court, individual litigation is a viable alternative. The plaintiffs disagree that these individual suits undermine the superiority of the class device. They note that the claims that have been filed represent only a tiny fraction of those potentially injured by Riddell's alleged misconduct and emphasize that significant economies of scale may follow from the same lawyers litigating both the individual suits and this class action.

Both parties present viable arguments about the relevance of the parallel suits. Riddell, for its part, is correct that the fact that members of the plaintiff class have filed individual parallel litigation weighs against superiority. But so too are the plaintiffs correct that the discovery involved in this litigation is likely to closely track that individual litigation, which has also been consolidated for pretrial purposes before the undersigned judge. The plaintiffs also rightly point out that counsel for both parties reside in this district and that the continued maintenance of a single action may lend significant economies of scale to the proceeding. The Court therefore concludes that this factor is a wash. And, in any event, it is not necessary to reach it in light of the foregoing discussion.

**C.      Alternative issue certification proposal**

Perhaps aware of the overwhelming Rule 23(b)(3) predominance problems presented by their class allegations, the plaintiffs suggest that the Court should deny the motion to strike because some of the issues may be amenable to class treatment using issue-specific classes provided for by Rule 23(c)(4). Specifically, that rule permits the district court, "[w]hen appropriate," to certify "a class action with respect to particular issues." Fed. R. Civ. P. Rule 23(c)(4). The plaintiffs propose that the Court should certify classes related to several discrete issues, including (1) the nature and extent of Riddell's duty to design helmets sufficient to prevent and/or reduce concussions and repeated head injuries, and to warn users of long-term risks of both; (2) whether any of Riddell's helmet designs within the class period were, in fact, adequate to protect against these risks; and (3) general causation—i.e., whether head trauma can cause the types of injuries alleged by plaintiff class members.

Although the Seventh Circuit has not yet outlined a grand theory of how Rule 23(b)(3)'s predominance requirement ought to interact with Rule 23(c)(4)'s provision for certification of issue-specific classes, the plaintiffs cite a case from the Sixth Circuit, *Martin v. Behr Dayton Thermal Products LLC*, 896 F.3d 405 (6th Cir. 2018), which endorsed the latter provision's role as safety valve for common issues in classes with predominance problems. Specifically, the court in *Martin* held that "Rule 23(c)(4) contemplates using issue certification to retain a case's class character where common questions predominate within certain issues and where class treatment of those issues is the superior method of resolution." *Id.* at 413. Two other circuits have read the rule somewhat more narrowly, employing what the *Martin* court described as "a functional,

17

superiority-like" analysis. *Id.* at 412 (discussing *Gates v. Rohm & Haas Co.*, 665 F.3d 255, 273 (3d Cir. 2011), and *In re St. Jude Medical, Inc.*, 522 F.3d 836, 841 (8th Cir. 2008)). The most comprehensive of these decisions identified a nonexclusive list of factors a district court should consider in deciding whether to certify issue classes under Rule 23(c)(4). *See Gates*, 665 F.3d at 273. These include "whether the substantive law separates the issue(s) from other issues concerning liability or remedy" and "the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s)." *Id.*

Riddell does not contest that the Seventh Circuit has not yet addressed how Rule 23(b)(3)'s predominance requirement ought to be squared with Rule 23(c)(4). But, they point out, the court of appeals *has* specifically condemned the sort of mass tort class action workaround the plaintiffs how attempt. *Cf. Jacks v. DirectSat USA, LLC*, No. 10-cv-1707, 2015 WL 1087897, at *6 (N.D. Ill. Mar. 10, 2015) ("No Seventh Circuit authority instructs when certification of an issue-only class is 'appropriate.' Instead, the Seventh Circuit has counseled on the circumstances when partial certification is not appropriate."). Specifically, Riddell points to *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir. 1995), wherein the Seventh Circuit granted a writ of mandamus compelling a district court to decertify a class of hemophiliacs who had sued manufacturers of blood products on a negligence theory after contracting HIV from their products. *Id.* at 1294.

The court in *Rhone-Poulenc* identified three reasons for its holding. First, the class certified by the district court was gigantic, effectively staking the fate of an industry on the "outcome of a single trial." *Id.* at 1299. Second, because the class spanned all

fifty states and the District of Columbia, the trial court sought to avoid problems of varying legal regimes by using a single negligence standard that was "an amalgam, an averaging, of the nonidentical negligence laws of [the] jurisdictions." *Id.* at 1302. Third, and most importantly here, the Seventh Circuit took particular issue with the trial court's attempt to sever purportedly common issues of duty and breach of duty from more individualized questions of causation and damages. *See id.* at 1302-03. In the court's view, such a bifurcation raised numerous practical problems and even violated litigants' Seventh Amendment rights because later juries would necessarily have to reassess duty and breach when assessing issues including comparative negligence and proximate causation. *See id.* at 1303.

The Court concludes that many of the same issues that led the Seventh Circuit to take the "exceptional" step of granting a writ of mandamus in *Rhone-Poulenc*, *id.* at 1304 (Rovner, J., dissenting), defeat the plaintiffs' last-ditch effort to avoid the motion the strike. As several courts have recognized, the concerns that animated the decision in *Rhone-Poulenc* are especially acute in mass tort class actions like this. *See DuRocher v. Riddell, Inc.* (*DuRocher II*), No. 13-cv-01570-SEV-DML, 2016 WL 5409139, at *3 (Sept. 28, 2016); *NCAA Student-Athlete Concussion Litig.*, 314 F.R.D. at 597-98. And, indeed, the plaintiffs' proposal to carve out questions of duty and breach—as well as related questions of knowledge and foreseeability—fit so squarely within the criticism outlined in *Rhone-Poulenc* that the Court is satisfied that no amount of discovery could save it and that the motion to strike is therefore appropriate. *See DuRocher*, 2015 WL 1505675, at *6; *see also Pilgrim*, 660 F.3d at 949.

Finally, the Court notes that the authorities cited by the plaintiffs are not contrary

to this outcome. For instance, the Sixth Circuit's conclusion upholding the certification of a Rule 23(c)(4) issue class in *Martin* turned expressly on "a robust application of predominance and superiority to the issues it certified for class treatment." *Martin*, 896 F.3d at 413. That is, it affirmed the certification only after it was satisfied that the certified issues "may be resolved with common proof" and would "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 415 (quoting *Amchem*, 521 U.S. at 615). But unlike *Martin*, the issues of duty, breach, foreseeability, and knowledge the plaintiffs seek to have certified for collective resolution here present insurmountable superiority problems because, as discussed above, they arise under eighteen different states' legal schemes. Certifying eighteen separate issues classes may formally avoid the predominance issues raised in cases like *Bridgestone/Firestone*, 288 F3d at 1015, but it does not—for the reasons described at length earlier in this opinion—resolve the enormous manageability problems presented by the putative class. The Court would, therefore, grant the motion to strike applying the *Martin* standard even if *Rhone-Poulenc* were not controlling.

## Conclusion

For the foregoing reasons, the Court grants the defendant's motion to strike the plaintiffs' class allegations [dkt. no. 77].

Date: August 1, 2019

_____
MATTHEW F. KENNELLY
United States District Judge